IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOHN TILLERSON, JR., | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 7:17-cv-00261 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| BERNARD BOOKER, *et al.*, | ) | United States District Judge |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

John Tillerson, Jr., a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 broadly alleging constitutional violations while housed at the Buckingham Correctional Center ("Buckingham"). In his complaint, Tillerson does not refer to any specific constitutional provision, but asserts a multitude of claims pertaining to the injuries he sustained from an altercation with his cellmate. Particularly, Tillerson claims that: (1) defendant Officer Scruggs denied Tillerson's request to speak to defendant Lieutenant Patton about being moved from his cell immediately preceding his cellmate's attack on him with regard to a problem between the cellmates and Tillerson's fear; (2) Tillerson was improperly housed with his cellmate, and defendant Assistant Warden of Security White failed to oversee adherence to the policy guarding against that; (3) defendant Warden Booker failed to ensure the safety of Tillerson's environment; and (4) defendant Lt. Patton refused to hear Tillerson's complaint, thereby denying him protection from his cellmate's attack. (Compl. Dkt. No. 1.)

Presently pending are defendants Lt. Patton, Asst. Warden White, and Warden Booker's joint motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Officer Scruggs's motion for summary judgment. (Dkt. Nos. 14, 17.) In support of his motion for summary judgment, Officer Scruggs submits medical records and sworn affidavits from third-parties: Nurse Bland, who

medically treated Tillerson after his cellmate attacked him, and Human Rights Advocate Meinhard, who maintains grievance files and reviewed Tillerson's grievance on this matter. (Dkt. Nos. 18-1, 18-2.) Tillerson responded in opposition to defendants' motions (Dkt. No. 20), and these motions are ripe for disposition. For the reasons that follow, the court will grant the motion to dismiss and the motion for summary judgment.

I. BACKGROUND

In his verified complaint and statement, Tillerson alleges that, on March 28, 2017, he "expressed [his] fear" and complained to the floor officer, Officer Scruggs, that he was experiencing problems with his cellmate. Tillerson asked to speak with Watch Commander Lt. Patton so he could be moved immediately, but Officer Scruggs denied Tillerson's request and instructed him to return to his cell. Upon returning to his cell, Tillerson "was brutally attacked and injured in [his] right eye and bitten on [the] left side of [his] face." Tillerson alleges that Lt. Patton's refusal to hear his complaint denied Tillerson his right to be protected, and therefore Lt. Patton is at fault for his injuries. Tillerson further alleges that Warden Booker conducted a full investigation into the attack and "concluded [that Tillerson] was a victim and errors had been made." Tillerson alleges that Asst. Warden White failed to oversee the records department, who "chose to house inmates in any available location without due consideration to any danger" and housed Tillerson with his cellmate despite the danger his cellmate presented, in violation of prison policy.[1] (Compl. at 3–4; Verified Statement, Attach. at 2-4, Dkt. No. 2.)

On April 16, 2017, Tillerson filed an Informal Complaint regarding the March 28, 2017 incident, and prison staff responded on April 26, 2017. Tillerson then submitted a regular grievance dated May 2, 2017, repeating that he complained to staff about his cellmate on the date

---

[1] For his alleged constitutional violations, Tillerson seeks "medical reimbursement, punitive damages, pain and suffering, and monetary damages" in an unspecified amount. (Compl. at 2.)

of the incident but noting that nothing was done. However, on May 4, 2017, the grievance was refused at intake by Advocate Meinhard because the filing period had expired. Tillerson submits that he attempted to exhaust his administrative remedies and appealed his untimeliness determination to the highest eligible level. (Verified Statement.)

In his motion for summary judgment, Officer Scruggs argues, among other things, that Tillerson failed to exhaust administrative remedies prior to filing this action. After the unlogged and untimely grievance was returned to Tillerson, he appealed the intake decision to the Regional Ombudsman. The intake decision was upheld on May 11, 2017, and Tillerson did not submit any additional grievances. Virginia Department of Corrections (VDOC) records reflect that Tillerson was assigned to segregation housing from March 29, 2017, to April 14, 2017, but Meinhard states that Tillerson would have had access to grievance forms during that time to submit a regular grievance. (Meinhard Aff. ¶¶11–14, Dkt. No. 18-2.)

In his response to the motion for summary judgment, Tillerson argues that he in fact exhausted his administrative remedies, contending that after a grievance intake decision is upheld by the Regional Ombudsman, "the only alternative remaining is the court system." Tillerson states that if a grievance is "denied [at intake,] the process clearly ends with the intake process." (Tillerson Response at 2, Dkt. No. 20.)

## II. MOTION TO DISMISS

### A. Standard of Review

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice of what the [ ] claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While the standard "does

3

not require 'detailed factual allegations,'. . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Twombly*, 550 U.S. at 555).

To survive a defendant's motion to dismiss for failure to state a claim, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). Although a complaint need not plead facts with heightened specificity, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. Consequently, "a plaintiff must 'nudge[ ] [its] claims across the line from conceivable to plausible' to resist dismissal." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 364–65 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible if the complaint contains factual content to allow the court to reasonably infer that there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Specifically, to state a claim under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States, and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988).

In considering the legal sufficiency of the complaint, the court accepts all well-pled factual allegations as true and all reasonable inferences "in the light most favorable to the plaintiff." *Wag More Dogs*, 680 F.3d at 365. In order to allow for the development of a potentially meritorious claim, federal courts must construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (citation omitted); *see Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[a] *pro se* plaintiff still must allege facts that state a

cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (citation omitted). Where a *pro se* complaint can be remedied by an amendment, however, the district court may not dismiss the complaint with prejudice but must permit the amendment. *Denton v. Hernandez*, 504 U.S. 25, 34 (1992); *see also Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir. 1965) (where a *pro se* complaint contains potentially cognizable claims, the plaintiff should be allowed to particularize such claims).

**B. Discussion**

Tillerson alleges that inaction or failure to follow policy on the part of Booker, White, and Patton resulted in him being attacked by his cellmate. Specifically, Tillerson alleges that Lt. Patton refused to speak to him when he attempted to alert Officer Scruggs that he was in fear of his cellmate, immediately before the attack occurred. He also claims that Asst. Warden White failed to oversee the records department and ensure the records staff adhered to prison housing policy, which requires that inmates housed together be of compatible age, crimes, length of sentence, and gang affiliations. Similarly, he claims that Warden Booker failed to oversee policy and hold staff accountable, which subsequently caused the violation of Tillerson's "right to be in a safe and secure environment with no threat of bodily harm and/or injury." (Compl. Claim #3.)

While Tillerson does not expressly reference the Eighth Amendment, the court construes his claims against the defendants as a claim for failing to protect Tillerson from a serious risk of harm posed by his cellmate in violation of the Eighth Amendment. In their memorandum in support of their motion to dismiss, defendants Booker, White, and Patton also construe the complaint this way. They assert that Tillerson has failed to state a claim against them in that the complaint: fails to adequately allege their personal involvement; fails to state a claim for supervisory liability; fails to state a violation by them of plaintiff's Eighth Amendment rights;

5

and alleges only a violation of VDOC policy with regard to housing that does not amount to a constitutional violation. (Dkt. No. 15.) Because the court finds that the complaint fails to state a constitutional claim on all of these grounds, it does not address defendants' additional request to dismiss based upon qualified immunity.

**1. Eighth Amendment claim is not sufficiently alleged**

The Eighth Amendment's prohibition on cruel and unusual punishment imposes a duty on prison officials to take "reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This includes a duty "to protect prisoners from violence at the hands of other prisoners," for "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id*. at 833, 834 (internal quotation marks and alterations omitted). To establish a claim under § 1983 for failure to protect from violence, an inmate must show: (1) "serious or significant physical or emotional injury," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003); and (2) that the prison officials had a "sufficiently capable state of mind." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). It is undisputed, for purposes of the motion to dismiss only, that Tillerson's injuries qualify as "significant" under the first element.

In this context, the requisite state of mind for the subjective inquiry consists of "deliberate indifference to inmate health or safety." *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834). An inmate establishes deliberate indifference by showing that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. Thus, "[i]t is not enough that the [prison official] should have

6

recognized" the substantial risk of harm. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Nor will "a showing of mere negligence" suffice. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001). Nonetheless, an inmate may "prove an official's actual knowledge of a substantial risk in the usual ways, including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128 (quoting *Farmer*, 511 U.S. at 842). Thus, "even a guard able to prove that he was in fact oblivious to an obvious injury of sufficient seriousness may not escape liability if it is shown . . . [that] 'he declined to confirm inferences of risk that he strongly suspected to exist.'" *Makdessi v. Fields*, 789 F.3d 126, 133-36 (4th Cir. 2015) (quoting *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995)).

Moreover, it is insufficient to show that the prison officials, generally, failed to protect an inmate; the inmate must "affirmatively show[ ] that the official charged acted personally in the deprivation of the [inmate's] rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal citations and quotation marks omitted). Prison officials without personal involvement "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676.

Viewed in the light most favorable to Tillerson, the factual allegations fail to plausibly state that defendants Booker, White, and Patton were aware of facts upon which they could draw an inference that a substantial risk of serious harm existed before Tillerson's attack. With respect to Lt. Patton, Tillerson alleges that Officer Scruggs refused Tillerson the opportunity to speak to Lt. Patton, even though Tillerson expressed fear and stated he was experiencing problems with his cellmate. For purposes of the motion to dismiss, it is undisputed that Tillerson was unable to speak to Lt. Patton, and Tillerson does not plead facts that it was well-known that

7

his cellmate was generally violent, threatening, or mentally unstable. Thus, the complaint lacks any allegation that Lt. Patton had any knowledge of any danger to Tillerson.

**2. Lack of personal involvement and no supervisory liability**

With respect to Asst. Warden White or Warden Booker, it is unclear whether these defendants were involved with the housing decision to place Tillerson with his cellmate. Tillerson alleges that Asst. Warden White failed to oversee the records department, allowing Tillerson to be housed with his cellmate, and that Warden Booker failed to oversee policy and hold staff accountable. Plainly, the factual allegations do not support that either of these defendants played a role in selecting Tillerson's specific cell or in overseeing his housing. Without particularized facts as to Asst. Warden White or Warden Booker's role in housing, Tillerson's claim is based on the conclusion that his mere cell assignment exhibited a deliberate indifference to a substantial risk to his safety. Nothing indicates that the defendants knew of any harm Tillerson's cellmate posed to him and deliberately ignored it.

Moreover, Booker, White, and Patton cannot be held liable for the actions of staff under their supervision with respect to Tillerson being housed with his cellmate or with regard to any failure to act by Scaggs. *See Wright*, 766 F.2d at 850; *Iqbal*, 556 U.S. at 676. Based on Tillerson's broad, conclusory allegations, the court cannot find that Tillerson has adequately alleged that Asst. Warden White or Warden Booker or Lt. Patton knew of and disregarded a significant risk to Tillerson's safety.[2] Nor, on these meager allegations, can the court hold them

---

[2] Tillerson's conclusory allegations that White or Booker are at fault for Tillerson's housing assignment based on subordinates' actions are insufficient to state their personal involvement because they do not rise above the level of speculation. *Twombly*, 550 U.S. at 555-56.

8

responsible under a theory of supervisory liability.[3]

### 3. Policy violations are insufficient

Finally, allegations of actions taken in violation of VDOC housing policies and procedures for determining cellmate suitability are insufficient to state a claim of constitutional magnitude. *See, e.g.*, *Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). Any failure of Booker or White to follow the prison housing policy does not implicate a constitutional violation, nor does any failure of staff under their supervision.

Accordingly, the court will grant the motion to dismiss filed by Booker, White, and Patton and will give Tillerson thirty days in which to file any amended complaint.

### III. MOTION FOR SUMMARY JUDGMENT

**A. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56(a), a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality…[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment under Rule 56, a court must view the record as a

---

[3] There are no allegations supporting the required elements of supervisory liability required under *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (a supervisor had actual or constructive knowledge of a risk of injury, that the response to that knowledge was deliberately indifferent, and that there was a causal link).

9

whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

**B. Discussion**

Defendant Officer Scruggs moves for summary judgment arguing that Tillerson failed to exhaust his administrative remedies, Tillerson failed to allege both a sufficiently serious injury and a sufficiently culpable state of mind as required to state an Eighth Amendment claim, Scruggs is not liable in his official capacity, and Scruggs is entitled to qualified immunity. Because the court finds that Tillerson has failed to exhaust his administrative remedies, it will grant Scruggs' motion for summary judgment.

1. No official capacity claim is available

As a preliminary matter, to the extent Tillerson brings this action against Scruggs in his official capacity for monetary damages, such claims are not cognizable under § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). Because Scruggs, in his official capacity, is not a person who can be sued under § 1983, the court must dismiss Tillerson's claim against Scruggs to the extent Scruggs was sued in his official capacity.

2. Tillerson failed to exhaust his administrative remedies

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available

administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, *Porter*, 534 U.S. at 524, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks, *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005). Failure to exhaust all levels of administrative review is not proper exhaustion and will bar an inmate's § 1983 action. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. *See id*. at 90–94 (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); see *Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). The court, however, is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aguilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); se*e Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

VDOC Operating Procedure ("OP") § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints and requires that, before submitting a formal grievance, an inmate must demonstrate that he has made a good faith effort to resolve a grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. The inmate may submit an informal complaint form to the

appropriate department head, and prison staff must respond within fifteen calendar days. If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out and submitting the standard "Regular Grievance" form within thirty calendar days from the date of the incident. A grievance meeting the criteria for acceptance is logged in on the day it is received. If the grievance does not meet the criteria for acceptance, prison officials complete the "intake" section of the grievance and return the grievance to the inmate. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman. However, if review by the Regional Ombudsman does not result in intake into the grievance process, the grievance issue must be resubmitted in adherence with the criteria for acceptance. To satisfy the exhaustion requirement, the grievance must be accepted into the grievance process and appealed through the highest eligible level of review without satisfactory resolution of the issue. (Meinhard Aff., Encl. A, OP 866.1, Dkt. No. 18-2.)

Tillerson claims that Officer Scruggs refused him the opportunity to speak with Lt. Patton about being moved from his cell on the date his cellmate attacked him on March 28, 2017. It is undisputed that Tillerson's informal grievance was timely and that Tillerson received a response. It is also undisputed, however, that Tillerson's regular grievance was dated May 2, 2017. Because his regular grievance was submitted more than thirty days after the incident and the filing period had expired, his grievance was rejected at intake. It is also undisputed that Tillerson sought review of the intake decision by the Regional Ombudsman, as required by VDOC grievance procedure, and the rejection of the grievance as untimely was upheld. Tillerson, however, disputes the proper grievance procedure after this stage, objecting that after a grievance intake decision is upheld by the Regional Ombudsman, "the only alternative remaining is the court system." Tillerson acknowledges OP 866.1 provides that there are three levels of review if

12

a grievance is accepted, but contends that if the grievance is "denied[,] the process clearly ends with the intake process." This is simply incorrect. OP 866.1 expressly states if review by the Regional Ombudsman does not result in intake into the grievance process, the issue must be resubmitted. OP 866.1 further states that, to satisfy exhaustion, the grievance must be accepted into the grievance process. Tillerson's grievance was never accepted into the grievance process, and he did not submit additional grievances on the matter. Moreoover, the Supreme Court made clear in *Woodford v. Ngo*, 548 U.S. 81, 90–9a4 (2006), that the untimely filing of a grievance is not "proper exhaustion" of available administrative remedies under § 1997e(a).

The court will grant Officer Scruggs' motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the court will grant the motion to dismiss filed by defendants Warden Booker, Assistant Warden of Security White, and Lt. Patton and will grant defendant Officer Scrugg's motion for summary judgment.

An appropriate order will be entered this day.

Entered: September 28, 2018.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge