IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN TILLERSON, JR., ) | |
|     Plaintiff, ) | Civil Action No. 7:17-cv-00261 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| BERNARD BOOKER, *et al.*, ) |     United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

John Tillerson, Jr., a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983,[1] alleging constitutional violations while housed at the Buckingham Correctional Center (Buckingham). Defendants Warden Booker, Assistant Warden White, and Lieutenant Patton filed a motion for summary judgment, and Tillerson responded, making this matter ripe for disposition.[2] Having reviewed the record, the court concludes that the defendants' motion for summary judgment must be granted.

I. BACKGROUND

Tillerson alleges that on March 28, 2017,[3] he was assaulted by his cellmate. Prior to the assault, Tillerson "expressed [his] fear" to the floor officer, Officer Scruggs, and requested to speak with the watch commander, Lt. Patton. Officer Scruggs told Tillerson to return to his cell

---

[1] The court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

[2] On September 28, 2018, the court entered an order and accompanying memorandum opinion, granting defendants Warden Booker, Asst. Warden White, and Lt. Patton's motion to dismiss but giving Tillerson thirty days to file an amended complaint. (Dkt. Nos. 22 and 23.) The court also granted summary judgment for Correctional Officer Scruggs, finding that Tillerson failed to exhaust available administrative remedies as to claims against Officer Scruggs. On October 11, 2018, Tillerson filed an unverified amended complaint reasserting his claims against the remaining defendants, Warden Booker, Asst. Warden White, and Lt. Patton. (Dkt. No. 24.)

[3] Tillerson asserts in his unverified amended complaint that the assault occurred on March 29, 2017. (Dkt. No. 24.) In his original verified complaint, as well as in his informal complaint and regular grievance, Tillerson states it occurred on March 28, 2017. (Dkt. Nos. 1 and 2.) This discrepancy is immaterial to the court's analysis.

and, thereafter, he "was brutally attacked and injured in [his] right eye and bitten on [the] left side of [his] face." (Compl. 3-4, Dkt. No. 1; V.S., Attach. 2-4, Dkt. No. 2.)

In his unverified amended complaint, Tillerson alleges that he "is registered as a Muslim and [his] cellmate was known to be a member of the Bloods. This was reiterated and made known to both Lt. Patton and Officer Scruggs at the time [the other inmate] was assigned to cell with Tillerson." Tillerson also alleges that Lt. Patton and Officer Scruggs knew that the other inmate "detested Muslims with a passion." (Am. Compl. 1-2, Dkt. No. 24.)

Tillerson alleges that Warden Booker is "responsible for the safety and well-being of all inmates." Tillerson further alleges that Asst. Warden White is "responsible for monitoring gang affiliation" and failed to oversee the records department, who "chose to house inmates in any available location without due consideration to any danger," leading to Tillerson erroneously being paired with the other inmate. Tillerson also alleges that Warden Booker conducted a full investigation into the attack and "concluded [that Tillerson] was a victim and errors had been made." (Compl. 3-4; V.S., Attach. 2-4; Am. Compl. 2.)

Following the incident, Tillerson was transferred to a segregation cell until April 14, 2017. On April 16, 2017, Tillerson filed an informal complaint regarding the incident. Prison staff responded on April 26, 2017. Tillerson then filed a regular grievance on May 2, 2017. On May 4, 2017, Buckingham's Human Rights Advocate (Advocate) Meinhard refused intake of the regular grievance because the thirty-day filing period had expired. Tillerson appealed the intake decision. On May 11, 2017, the Regional Ombudsman upheld the intake refusal because the regular grievance was filed late. (V.S., Attach. 2-4; Am. Compl. 3.)

In their motion for summary judgment, defendants Warden Booker, Asst. Warden White, and Lt. Patton argue, among other things, that Tillerson failed to exhaust administrative remedies

2

prior to filing this action. Additionally, defendants argue that Tillerson's remaining claims fail on their merits, but the analysis merely argues that the first amended complaint fails to state a claim. (Mem. Supp. Mot. Summ. J. 4-16, Dkt. No. 29.)

Liberally construed, Tillerson's remaining claims are that: (1) Warden Booker, Asst. Warden White, and Lt. Patton failed to protect Tillerson in violation of the Eighth Amendment; (2) Warden Booker and Asst. Warden White are liable under the theory of supervisory liability; (3) Warden Booker and Asst. Warden White failed to ensure the safety of Tillerson's environment; and (4) Tillerson was improperly housed in a cell with a gang member in violation of Virginia Department of Corrections (VDOC) policy.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable[ ] or is not significantly probative." *Anderson*, 477 U.S. at 249.

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets

this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 322-24; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). Instead, the nonmoving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249-50).

**B. Exhaustion**

Tillerson failed to exhaust his available administrative remedies. The Prison Litigation Reform Act provides in 42 U.S.C. § 1997e(a) that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006) (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)).

The court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aguilar-Avellaveda v. Terrell*, 478 F.3d

4

1223, 1225 (10th Cir. 2007); se*e Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

VDOC Operating Procedure (OP) § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints and requires that, before submitting a formal grievance, an inmate must demonstrate that he has made a good faith effort to resolve a grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. The inmate may submit an informal complaint form to the appropriate department head, and prison staff must respond within fifteen calendar days. If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out and submitting the standard "Regular Grievance" form within thirty calendar days from the date of the incident. Among other requirements, a regular grievance may only address one issue. A grievance meeting the criteria for acceptance is logged in on the day it is received. If the grievance does not meet the criteria for acceptance, prison officials complete the "intake" section of the grievance and return the grievance to the inmate. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman. However, if review by the Regional Ombudsman does not result in intake into the grievance process, the grievance issue must be resubmitted in adherence with the criteria for acceptance. To satisfy the exhaustion requirement, the grievance must be accepted into the grievance process and appealed through the highest eligible level of review without satisfactory resolution of the issue. (Meinhard Aff., Encl. A, OP 866.1, Dkt. No. 29-1.)

Here, the incident occurred on March 28, 2017, and Tillerson filed his informal grievance on April 16, 2017. Even if Tillerson had difficulty filing while in segregation, he was released on April 14, 2017, with plenty of time to file. Tillerson received a response on April 26, 2017, and had time to submit a regular grievance within thirty calendar days of the incident. However, Tillerson filed the regular grievance on May 2, 2017, after the thirty-day time limit elapsed. Tillerson appealed this decision to the Regional Ombudsman, who upheld Advocate Meinhard's intake refusal. The Supreme Court made clear in *Woodford*, 548 U.S. at 90-94, that the untimely filing of a grievance is not "proper exhaustion" of available administrative remedies under § 1997e(a).

It is undisputed that Tillerson filed one regular grievance regarding the incident and it was rejected at intake because the regular grievance filing period had expired. It is also undisputed that Tillerson sought review of Advocate Meinhard's regular grievance intake decision by the Regional Ombudsman, as required by VDOC grievance procedure, and that the intake decision was upheld.

In his amended complaint, Tillerson argues that (1) he did exhaust the administrative remedies because he appealed the intake refusal to the Regional Ombudsman, (2) he was misled by the information provided on the regular grievance forms, and/or (3) the grievance forms were not readily available. These arguments fail. First, as previously discussed, it is undisputed that Tillerson filed his regular grievance after thirty calendar days from the date of the incident. When a regular grievance is denied at intake and returned, it does not exhaust available remedies. Therefore, the court concludes that Tillerson did not exhaust available administrative remedies.

Tillerson also argues that the grievance procedure was not readily available to him and/or that he was misled by the grievance forms. The court is unpersuaded by these arguments. First, although Tillerson claims that it was not easy to acquire the grievance forms while in segregation, he does not argue that the forms were unavailable or that he was prevented from filing them. Advocate Meinhard avers that "[g]rievance forms and informal complaint forms are available all day every day in all housing units, including segregation, and in the medical unit. If an offender is assigned to segregation and needs a grievance form or an informal complaint form, he may ask a correctional officer or other staff for the form, and it will be provided to him." (Meinhard Aff. ¶ 17, Dkt. No. 29-1.) Tillerson provides no evidence to refute this. Additionally, Tillerson had time to submit his regular grievance after he received the response to his informal grievance on April 26, 2017. Moreover, "[c]ourts have squarely rejected prisoners' attempts to bypass the exhaustion requirements by merely arguing lack of knowledge about the grievance process." *Goodwin v. Beasley*, 2011 U.S. Dist. LEXIS 21449, at *11, 2011 WL 835937, at * 3 (M.D.N.C. Mar. 3, 2011). The evidence shows that Tillerson had access to the grievance forms, both in and out of segregation. Further, the regular grievance form states in its instructions that an inmate must submit the grievance within thirty days from the date of the occurrence. Therefore, the court concludes that Tillerson has not demonstrated that administrative remedies were not available to him.

III.  CONCLUSION

For the stated reasons, the court concludes that Tillerson failed to exhaust available administrative remedies and, thus, will grant the defendants' motion for summary judgment.

An appropriate order will be entered.

Entered: July 24, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge